UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
DORIAN GETLIN,

        Plaintiff,

-against-                                       **MEMORANDUM & ORDER**

P.O. JOHN ZOLL and THE INCORPORATED      Civil Action No. 08-1872
VILLAGE OF HEMPSTEAD,                         (DRH) (AKT)

        Defendants.
------------------------------------------------------X

**APPEARANCES:**

**For Plaintiff:**
**Law Offices of Alan D. Levine**
80-02 Kew Gardens Road, Suite 1010
Kew Gardens, NY 11415
By:    Alan D. Levine, Esq.

**For Defendants:**
**Jaspan Schlessinger LLP**
300 Garden City Plaza, 5th Floor
Garden City, NY 11530
By:    Laurel R. Kretzing, Esq.
        Seth Presser, Esq.

**HURLEY, Senior District Judge:**

        Dorian Getlin ("Plaintiff") commenced this action alleging, *inter alia*, that Defendants violated his Fourth Amendment Rights by subjecting him to excessive force. Presently before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, the motion is granted in part and denied in part.

## Background

The following facts are undisputed unless otherwise noted.

On or about February 16, 2007, at approximately 1:30 a.m. Plaintiff left his house and, while under the influence of drugs and/or alcohol, drove a borrowed automobile to Terrace Avenue in the Village of Hempstead and purchased narcotics. Plaintiff was then followed in a low speed chase by police officers, including defendant P.O. Zoll ("Zoll"), an employee of defendant Incorporated Village of Hempstead ("Hempstead"). The chase ended on a dead-end street in Merrick, New York at approximately 2:45 a.m, at which time Plaintiff was being pursued not only by Zoll in an unmarked car but by four marked police cars. What happened on that dead-end street is in dispute.

According to Plaintiff, when he attempted to turn his vehicle around on the dead end street there was a police officer standing on the side of the vehicle. He further avers that police officers did not leave their patrol cars until he had already stopped. He claims he "put the car in park, turned the engine off, pulled the keys out, threw them on the dashboard and put [his] hands up." He saw police coming at him with their guns drawn, some yelling for him to put his hands up and freeze while others yelling for him to get out of the vehicle. Afraid that his reaching for the door to exit might be mistaken for reaching for a weapon, Plaintiff began repeatedly yelling "don't shoot." Then, "[o]ut of the corner of [his] left eye [he] saw a white muzzle flash and a loud pop. The bullet burst through the driver's side window, went through [his] arm and into [his] chest." He slumped over and started coughing up blood. "The next thing [he] felt was a bunch of sets of hands grab [him], all parts of [his] body, you know, and just rip [his] seat belt off, and just drag [him] through the window and right . . . out in the street." The officers then began kicking and punching Plaintiff. Ex. D to Levine Declar. at 123-29.

According to defendants, police officers blocked the only exit from the street with their vehicles and began approaching plaintiff's vehicle with weapons drawn and yelling for plaintiff to stop and exit the vehicle. Plaintiff attempted to make a u-turn with his vehicle, driving it over the front lawn of one or more homes until a physical barrier forced plaintiff to turn back into the street. Plaintiff then pointed his vehicle toward a Nassau County police officer who was near enough to plaintiff's car that the officer was at risk of serious physical injury. Again numerous officers yelled verbal commands for plaintiff to stop and exit. The Nassau County officer took several steps backward as the vehicle approached at a rate of approximately ten to fifteen miles per hour. When the vehicle was about ten feet away from the Nassau County officer, Zoll believed there was a very real and very imminent threat of serious bodily injury and fired one shot through the driver's side window of plaintiff's vehicle, striking plaintiff. Plaintiff then refused to exit the vehicle and it took five officers to take him into custody. The force used was only that necessary to affect the arrest; no kicking or punching occurred.

It is undisputed that Plaintiff was arrested and received medical treatment for his wounds. Plaintiff was charged with reckless endangerment in the first degree, resisting arrest, criminal possession of a controlled substance, driving while ability impaired by drugs, reckless driving, and failure to stop at a stoplight.

On April 24, 2008, Plaintiff pled guilty to reckless endangerment in the second degree, a class A misdemeanor and to operating a motor vehicle while under the influence of alcohol or drugs, a violation. "A person is guilty of reckless endangerment in the second degree when he recklessly engages in conduct which creates a substantial risk of serious physical injury

3

to another person." N.Y. Penal Law §120.20. The following is an excerpt from Plaintiff's plea allocution:

| | |
|---|---|
| The Court: | Would you tell me what happened on February 16th, 2007 at about 2:45 a.m. at 1895 Bushwick Avenue, Merrick, Nassau County? |
| The Defendant: | At that time I was operating a motor vehicle while impaired and in a dangerous manner. |
| The Court: | When you say impaired, had you taken some kind of drug that impaired your ability to drive? |
| The Defendant: | Yes. |
| The Court: | And were you driving that car in a reckless manner? |
| The Defendant: | Yes, Your Honor. |
| The Court: | Do the People wish to ask any questions? |
| Ms. Abdi: | Yes, thank you, your Honor. Mr. Getlin, you were driving a motor vehicle on that date, is that correct? |
| The Defendant: | Yes, ma'am. |
| Ms. Abdi: | And you were attempting to allude capture by the police, is that correct? |
| The Defendant: | Yes, ma'am. |
| Ms. Abdi: | And when you turned around in a dead-end street was there a police officer out of his car in front of you? |
| The Defendant: | Permission to consult with my attorney? |
| The Court: | Yes. |
| The Defendant: | To the best of my recollection, ma'am, the police officer I saw was off to the side of the car. |
| Ms. Abdi: | But you accelerated your vehicle, is that correct? |
| The Defendant: | Accidently, yes. |
| MS. Abdi: | Well, you pressed on the accelerator of your vehicle to go forward, is that correct? |
| The Defendant: | Recklessly, yes. |
| Ms Abdi: | And the police officer was near enough to your car that it would create a risk of physical injury if you would have struck him, is that correct? |
| The Defendant: | Yes. |

Ms. Abdi: Thank you, your Honor.

Ex. C to Levine Decl. at 10-12.

## Discussion

### I. Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v.*

*Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertions that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglass Elliman-Gibbons & Ives, Inc.* 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because of the evidentiary burdens that the

respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible'." *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

## II. The Parties' Contentions

Hempstead seeks summary judgment on the ground that the complaint fails to state a § 1983 claim against it. Zoll moves for summary judgment arguing that he is entitled to qualified immunity. In support of his argument, Zoll asserts that, because of his guilty plea and plea allocution, Plaintiff is collaterally estopped from disputing that Plaintiff created a substantial risk of serious injury.

Plaintiff's response is that collateral estoppel does not apply and the existence of disputed issues of fact, as well as the lack of discovery, preclude granting summary judgment in favor of Zoll.

## III. Section 1983 Liability of Hempstead

Section 1983 provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the
> District of Columbia, subjects or causes to be subjected, any
> citizen of the United States or other persons within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity or other proper
> proceeding for redress . . . .

42 U.S.C. § 1983. This statute furnishes a cause of action for the violation of federal rights. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). To prevail on a Section 1983 claim, a plaintiff must establish that a person acting under color of state law deprived him of a federal right. *See id.; see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). In other words, a Section 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges. *See Eagleston v. Guido*, 41 F.3d 865, 872 (2d. Cir. 1994).

A municipality cannot be held liable under §1983 on a respondeat superior theory of liability for its employees' torts. *See Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through official decision making channels." *Id.* at 690-91. Accordingly, in order to bring a § 1983 claim against a municipal defendant, a plaintiff must establish both a violation of his constitutional rights and that the violation was attributable to a municipal custom or policy. *Id.*; *see also Coon v. Town of Springfield, Vt.*, 404 F.3d 683, 686 (2d Cir. 2005) ("[I]t is when execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

The existence of a municipal policy or custom, may be plead in any of four ways. A plaintiff may allege

> (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision-making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of the policymaking officials; or (4) a failure by policymakers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees.

*Bonds v. Suffolk County Sheriff's Dept.*, 2006 U.S. Dist. Lexis 93607, at * 5 (E.D.N.Y. Dec. 5, 2006) (internal quotations and citations omitted).

Here, Plaintiff has not alleged, no less established, sufficient facts to conclude that Officer Zoll's use of force was pursuant to an official municipal policy or otherwise legally ascribable to the municipality. Additionally, Plaintiff has failed to put forth an argument in opposition to Hempstead's motion for summary judgment. The § 1983 claim against Hempstead is therefore dismissed.

## IV. Collateral Estoppel

"The preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 87-88 (2d Cir. 2000); *see Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000).

Under New York law, collateral estoppel prevents a party from relitigating an issue

decided against that party in a prior adjudication. It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate. Additionally, the issue that was raised previously must be decisive of the present action.

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003) (internal citation and quotation marks omitted). "An issue is 'decisive in the present action' if it would prove or disprove, without more, an essential element of any of the claims set forth in the complaint." *Id*. at 332.

Here, Plaintiff's claim of excessive force is not precluded by his prior conviction for reckless endangerment. Neither the conviction itself nor the plea allocution addresses Plaintiff's action in accelerating his car so as to endanger a police officer vis a vis when Plaintiff was shot. In other words, neither would preclude Plaintiff from testifying, consistent with his 50-h examination, that he had stopped his vehicle and had his hands up when the subject shot was fired. *See, e.g., McCrory v. Belden*, 2003 WL 22271192 (S.D.N.Y. Sept. 30, 2003) (inmate's conviction for attempted assault of corrections officer did not collaterally estop inmate from claiming excessive force was used either before or after inmate attempted to cause injury to officer); *Sanabria v. Martins,* 568 F. Supp. 2d 220, 226 (D. Conn. 2008) ( although plaintiff pled guilty to offense of interfering with police officer he was not estopped from seeking damages based on quantum of force used against him after he completed offense of interfering with officer or perhaps in response thereto); *see also Sullivan*, 225 F.3d at 165 (excessive force claim not precluded by conviction for resisting arrest as "the issue of the officer's use of excessive force was not essential to the conviction"); *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (inmate was not collaterally estopped from asserting claim of excessive

force against prison guards even though he had pled guilty to assault stemming from same incident as the assault conviction was not necessarily inconsistent with the guards having applied excessive force in subduing the inmate); *Courtney v. Reeves*, 635 F.2d 326, 329 (5th Cir. 1981) (plaintiff's admission to assaulting a police officer made during a guilty plea did not negate possibility that the officer used excessive force). Moreover, Plaintiff's conviction does not preclude his excessive force claim because that conviction did not resolve to his detriment his claim that after he was shot, he was pulled through the window of the car, kicked and punched. To paraphrase the *Griffen* Court, "the [reckless endangerment] charges to which [Plaintiff] pled guilty certainly cast doubt on his claim. They do not, however, preclude a reasonable jury from finding that excessive force was used against him on the day in question." 193 F.3d at 92.

Having resolved the issue of collateral estoppel, the Court now turns to whether Zoll is entitled to qualified immunity.

## V. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, – U.S. – , 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official

authority." *Lee v. Sandberg*, 136 F.3d 94, 100 (2d Cir. 1997). "Police officers generally enjoy a qualified immunity from liability for their discretionary actions if their conduct does not 'violate clearly established rights of which a reasonable person would have known,' or if it is 'objectively reasonable to believe that their acts did not violate those clearly established rights.'" *Townes v. New York*, 176 F.3d 138, 143 (2d Cir. 1999) (quoting *Soares v. Connecticut*, 8 F.3d 917, 920 (2d Cir. 1993)); *accord Taravella v. Town of Wolcott*, – F.3d – , 2010 WL 914682, * 2 ("When a defendant invokes qualified immunity to support a motion for summary judgment, courts engage in a two-part inquiry: whether the facts shown 'make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'") (quoting *Pearson,* 129 S. Ct. at 815-16)).

"To be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). An official is therefore entitled to immunity if his action was 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.' *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir.1999) . . . ." *Taravella*, 2010 WL 914682 at *3.

With respect to the qualified immunity defense to an allegation of excessive force,

> The threshold question is whether the facts, **taken in the light most favorable to the plaintiff**, show a constitutional violation. **The inquiry is whether the alleged use of excessive force was objectively reasonable**. Thus, claims that an officer made a reasonable mistake of fact that justified the use of force are considered at this stage of the analysis. If the plaintiff fails to establish a constitutional violation, the qualified immunity inquiry

> ends and the plaintiff may not recover. If, however, a constitutional violation can be shown, the court must then determine whether the constitutional right was clearly established at the time of the constitutional violation. This inquiry focuses on whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Resolution of this inquiry is purely legal in that it depends upon whether the law put the officer on notice that his conduct would be clearly unlawful.

*Cowan v. Breen*, 352 F.3d 756, 761 (2d Cir. 2003) (emphasis made, internal quotations and citations omitted). When considering a claim of qualified immunity on a motion for summary judgment, the Court must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences against the movant. *Redd v, Wright*, – F.3d – , 2010 WL 774304, at * 2-3 (2d Cir. Mar. 9, 2010).

An officer's decision to use deadly force is objectively reasonable only if "the officer has probable cause to believe that the suspect poses a significant threat of death or serious bodily injury to the officer or others." *O'Bert v. Vargo*, 331 F.3d 29, 36 (2d Cir. 2003); *see also Public Adm'r of Queens County v. City of New York*, 2009 WL 498976, * 5 (S.D.N.Y. Feb. 24, 2009).

If the Court were to accept Zoll's version of the facts, to wit, that he shot Plaintiff when Plaintiff accelerated his car with a Nassau County police officer near enough to create a substantial risk of injury to that officer, then the cases cited by Zoll, *e.g.*, *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992); *Reese v. Anderson*, 926 F.2d 494 (5th Cit. 1991); *Costello v. Town of Warwick*, 273 Fed. Appx. 118 (2d Cir. 2008), would mandate the granting of Zoll's motion. However, the Court is required to view the facts in the light most favorable to the Plaintiff. Viewing the facts in that light requires denial of the motion. Zoll would not have had probable cause to believe that Plaintiff posed a

13

significant threat of serious bodily injury once the Nassau Police Officer was no longer in danger and Plaintiff had stopped the car, turned off the engine, threw the keys on the dash, and put his hands in the air. Nor would it have been reasonable, once Plaintiff was shot and not resisting arrest, for the officers to drag his body through the window and kick and punch him. Moreover, it would be clear to a reasonable officer that this conduct was unlawful in the situation as viewed in the light most favorable to Plaintiff. *See generally Cowan*, 352 F.3d at 764 n.7 (in excessive force cases, analysis of qualified immunity and the Fourth Amendment often "converge on one question: Whether in the particular circumstances faced by the officer, a reasonable officer would believe that the force employed would be lawful").

Here, the issue of qualified immunity is not ripe for determination given the disputed versions of what transpired (1) immediately prior to the subject shots being fired, and (2) after Plaintiff was shot.

## Conclusion

For the reason set forth above, the § 1983 claim as against Hempstead is dismissed and the motion for summary judgment is otherwise denied.

Dated: Central Islip, New York
      April 20, 2010

/s/ _____
Denis R. Hurley
Senior District Judge